UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAMEL BLACK,                                        :
                                                    :
                            Petitioner,             :
                                                    :         **DECISION AND ORDER**
            -against-                               :         13-CV-2260 (WFK)
                                                    :
DAVID ROCK, Superintendent, Upstate                 :
Correctional Facility,                              :
                                                    :
                            Respondent.             :
-----------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court is a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 by
Petitioner Jamel Black ("Petitioner"). Dkt. 1 ("Petition"). Petitioner, represented by counsel,
argues he is entitled to *habeas* relief because (1) he suffered a *Batson* violation. *Id.* at 16-48.
Petitioner, proceeding *pro se*, raises the following additional bases for *habeas* relief: (2) violation
of Petitioner's due process rights due to prosecutorial misconduct regarding one witness's
viewing of a line up; (3) violation of Petitioner's due process rights due to prosecutorial
misconduct regarding the testimony of three witnesses; (4) violation of Petitioner's right to
effective assistance of counsel at trial; and (5) violation of Petitioner's right to effective
assistance of counsel at sentencing. Petition at 63-103. For the reasons discussed below, the
petition for the writ of *habeas corpus* is denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### Alleged Crimes, Arrest, and Conviction

On October 27, 2004, two people wearing hoods walked into a grocery store owned by

Zolio Chavez ("Zolio") in Brownsville, Brooklyn. Petition at 10; Dkt. 11 ("Opp.") at ¶ 34. At

the time, Zolio, his son Christian Chavez ("Christian"), and Jorge Vasquez ("Vasquez") were

working in the grocery store. Petition at 10. One hooded man wrestled with Zolio, while the

other, Petitioner,[1] pulled out a silver gun and demanded money from Christian, ordered Vasquez

to lie down on the floor, and then knocked Zolio unconscious. *Id.* at 10, 52; Opp. at ¶ 3, 34-35,

---

[1] At trial, Christian identified Petitioner as the man with the gun. Petition at 52-53.

1

39-40. The second man then stole Zolio's wallet from his pocket and money from the cash register, and both men fled together. Petition at 10; Opp. at ¶ 36, 39.

About a month later, on November 30, 2004, a few New York City Police Department ("NYPD") officers saw Petitioner showing someone a black gun on a street in Brownsville. Petition at 10, 55; Opp. at ¶ 4, 41, 49-50. Two of the NYPD officers immediately chased Petitioner into a building, up the stairs, recovering the gun and a set of keys he discarded along the way. Petition at 10-11, 55, 57; Opp. at ¶ 4, 42, 49. The NYPD officers chased Petitioner into an apartment, using the keys Petitioner had dropped to get in. Opp. at ¶ 43. Once inside the apartment, they observed Petitioner closing a safe in a bedroom and immediately arrested him. Petition at 11, 55; Opp. at ¶ 4, 44, 49. The NYPD officers recovered a loaded silver handgun and live rounds from under the mattress, drugs from an open shoe box that also contained identification belonging to Petitioner, a wallet containing Zolio's identification, and drugs, ammunition, and cash from the safe. *Id.* at 11, 55, 58; Opp. at ¶ 45, 49-50.

Later that day, Christian identified Petitioner in a line-up. Petition at 11; Opp. at ¶ 4, 6-8, 37. Zolio also viewed a line-up that day, and stated the perpetrator of the robbery was either Petitioner or another man, but he was "almost sure" it was Petitioner. Petition at 11, Opp. at ¶ 6-8, 39, 54. According to the Screening Sheet and first N.Y. C.P.L.R. 710.30(1)(b) notice provided by the government to the defense, Vasquez viewed a line-up that day and identified an individual who was not Petitioner as the man who robbed the grocery store. Opp. at ¶ 6-8, 84; Dkt. 1-2 ("*Pro Se* Exs") at Ex. A, B. No other documents state Vasquez participated in a line-up, and the assigned detective does not remember Vasquez participating in a line-up. Opp. at 81-82, 84.

Subsequently, Petitioner was indicted for his "alleged involvement in [a robbery] that took place in October 2004 at a grocery store in Brooklyn[,]" as well as "for his alleged possession of a loaded firearm in November 2004." *People v. Hecker*, 942 N.E.2d 248, 260 (N.Y. 2010); *see also* Petition at 4, 50. Ultimately, after two previous indictments, Petitioner was charged in the Second Superseding Indictment with Robbery in the First, Second, and Third Degrees, Criminal Possession of a Weapon in the Third Degree, two counts of Criminal Possession of a Weapon in the Fourth Degree, Grand Larceny in the Fourth Degree, two counts of Petit Larceny, Assault in the Third Degree, two counts of Criminal Mischief in the Fourth Degree, two counts of Criminal Possession of Stolen Property in the Fifth Degree, Unlawful Possession of Marijuana, three counts of Criminal Possession of a Controlled Substance in the Seventh Degree, and Firearms/ Possession of Ammunition. Petition at 51; *Pro Se* Exs at Ex. E.

On February 9, 2006, a *Huntley-Wade*[2] hearing was held by the trial court to determine whether the November 30, 2004 line-up evidence could be admitted at trial. *Pro Se* Exs at *Huntley-Wade* Hearing; Opp. at ¶ 10. The Prosecutor stated that only two line-ups had occurred on November 30, 2004. Opp. at ¶¶ 10, 81-82. The trial court determined that the line-up evidence could be admitted into evidence because Petitioner's trial counsel ("Defense Counsel") withdrew his objection to the line-up evidence. *Pro Se* Exs at *Huntley-Wade* Hearing.

On April 4, 2006, Petitioner was convicted by a jury of Robbery in the First Degree (N.Y. Penal Law § 160.15(4)), Assault in the Third Degree (N.Y. Penal Law § 120.00(1)), Criminal Possession of Stolen Property in the Fifth Degree (N.Y. Penal Law § 165.40), and Criminal

---

[2] In *People v. Huntley*, 204 N.E.2d 179, 183 (N.Y. 1965), the New York Court of Appeals held that a trial court must find the voluntariness of a defendant's statement beyond a reasonable doubt before it can be submitted to a jury, and that the burden of showing voluntariness is on the People. A *Wade* hearing, named after *United States v. Wade*, 388 U.S. 218, 232 (1967), is held to determine if a witness's identification is tainted by unduly suggestive identification procedures. *See, e.g., Maldonado v. Burge*, 697 F. Supp. 2d 516, 521, 529-31 (S.D.N.Y. 2010) (Holwell, J.).

Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)). Petition at ¶ 3; Opp. at ¶ 62. Petitioner was acquitted of Criminal Possession of a Weapon in the Fourth Degree, Unlawful Possession of Marijuana, two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, and Possession of Ammunition. Petition at 11, 59; Opp. at ¶ 62. On May 1, 2006, Petitioner was sentenced to 31 years' imprisonment, twenty-four years imprisonment on the first degree robbery count and seven years imprisonment on the third degree criminal possession of a weapon count to run consecutively, as well as five years post-release supervision. *Hecker*, 942 N.E.2d at 262; Petition at ¶ 3, 59; Opp. at ¶ 65. The severity of Petitioner's sentence was due in part to his adjudication as a second violent felony offender as a result of a prior violent felony conviction for Criminal Possession of a Weapon in the Third Degree. Petition at 59, *Pro Se* Exs at Ex. I at 2, 341-45; Opp. at ¶¶ 63-65, 78-80, Attachment F (Plea Transcript) at 6.

**Direct Appeal**

On May 7, 2008, Petitioner appealed his conviction to the New York State Appellate Division, Second Department ("Second Department"). Petition at ¶ 7(a); *see also* Dkt. 1-3 ("Principal Ex") A; Opp. at ¶ 66. Petitioner, through counsel, argued "the [P]rosecutor's peremptory challenges to black jurors based on their residence, lack of employment, and level of education" violated *Batson v. Kentucky*, 476 U.S. 79 (1986). Petition at ¶ 7(b). Petitioner also filed a supplemental *pro se* brief. *Id.*; *see also* Principal Ex. D.

On September 29, 2009, the Second Department affirmed Petitioner's conviction by a vote of three to one. *People v. Black*, 886 N.Y.S.2d 460, 461-62 (2d Dep't 2009). Regarding the *Batson* challenge, the Second Department held the reasons proffered by the Prosecutor for challenging the three jurors at issue were race-neutral, and that Petitioner "failed to carry his

4

ultimate burden of demonstrating discrimination by showing that the asserted reasons for the challenge[s] . . . were pretextual." *Id.* Regarding Petitioner's *pro se* brief, the Second Department held the *in camera* questioning of jurors did not violate Petitioner's right to be present at all material stages of the trial because a juror had been, and had informed the other jurors that he/she had been, threatened. *Id.* at 462. The Second Department further found that both Petitioner's prosecutorial misconduct and ineffective assistance of counsel claims were meritless, and that the sentence imposed was not excessive. *Id.*

The dissenting judge agreed with the Second Department's findings in regards to Petitioner's *pro se* claims, but stated he would have reversed the judgment on the basis that "[Petitioner] established a *Batson* violation with respect to the [P]rosecutor's exercise of peremptory challenges to strike jurors Angela Gordon and Tanya Williams by demonstrating that any concern with respect to their lack of employment bore no relation to the facts of the case and that Gordon's place of residence was not related to the factual circumstances of the case." *Id.* (Spolzino, J.P., dissenting). He also noted that Williams' lack of a high school education was not a legitimate concern in this case. *Id.*

Petitioner sought and was granted leave to appeal to the New York State Court of Appeals ("Court of Appeals") on January 6, 2010. *People v. Black*, 922 N.E.2d 916 (N.Y. 2010); *see also* Petition at ¶ 7(d); Opp. at ¶ 68. On November 30, 2010, the Court of Appeals unanimously affirmed Petitioner's conviction. *Hecker*, 942 N.E.2d at 273-275. The Court of Appeals found "there [wa]s record support for [the] Supreme Court's acceptance of the race-neutral reasons" provided by the Prosecutor and that Petitioner "did not meet his ultimate burden of persuasion." *Id.* at 273. With regards to Gordon and Williams specifically, the Court of Appeals reasoned the Prosecutor's race-neutral reasons "had some basis in accepted trial

strategy." *Id.* (internal quotation marks and citation omitted). The Court of Appeals rejected a rule that "reasons [which] [bear] no relation to the actual facts of [a] particular case[ ] are 'per se' pretextual[]" as "overly restrictive[.]" *Id.* Instead, the Court of Appeals stated as a rule "that trial courts must evaluate whether the proffered step-two race-neutral reasons are pretextual based on the totality of all the relevant facts and circumstances." *Id.* (citations omitted). Applying that rule to the facts of Petitioner's case, the Court of Appeals found the Prosecutor "employed a general strategy to select primarily jurors with gainful employment or who have had at least a prior history of employment. . . . Thus, there is no basis to conclude that the three stricken jurors were treated disparately in relation to the jurors selected by the parties of that race played any part in their being peremptorily challenged." *Id.* at 274. The Court of Appeals also determined the claims raised in Petitioner's *pro se* brief were unpreserved or without merit. *Id.*

On February 25, 2011, Petitioner filed a petition for a writ of certiorari to the Supreme Court of the United States. Petition at ¶ 8, p. 16. On April 18, 2011, the Supreme Court of the United States denied Petitioner's application. *Black v. New York*, 131 S.Ct. 2117, 2117 (2011).

**State Post-Conviction Motion**

On or about March 19, 2012, Petitioner filed a motion to vacate the judgment and set aside his sentence pursuant to N.Y. Crim. Proc. Law §§ 440.10, 440.20 ("440 Motion"). Petition at ¶ 9, p. 16; Opp. at ¶ 75-76. On August 2, 2012, the trial court denied Petitioner's 440 Motion on all grounds. Petition at ¶ 9, p. 16; Opp. at ¶ 86-87, Ex. F. On August 21, 2012, Petitioner filed for leave to appeal the denial to the Second Department. Petition at ¶ 9, p. 16. On April 1, 2013, Petitioner's application for leave to appeal was denied. Petition at ¶ 9, p. 16; Principal Ex. L; Opp. at ¶ 88.

**_Habeas Corpus_ Petition**

On April 15, 2013, Petitioner filed the instant _habeas corpus_ petition pursuant to 28 U.S.C. § 2254 with this Court. Petition at 1. Petitioner, represented by counsel, alleges he is entitled to the writ because (1) the Prosecutor committed a _Batson_ violation during _voir dire. Id._ at 16-48. Petitioner proceeding _pro se_ raises the following additional bases for _habeas_ relief: (2) violation of Petitioner's Due Process rights due to prosecutorial misconduct regarding Vasquez's viewing of a line-up; (3) violation of Petitioner's Due Process rights due to prosecutorial misconduct regarding the testimony of three witnesses; (4) violation of Petitioner's right to effective assistance of counsel at trial; and (5) violation of Petitioner's right to effective assistance of counsel at sentencing. _Id._ at 63-103. Respondent David Black, Superintendent of Upstate Correctional Facility ("Respondent"), the authorized person who has custody of Petitioner, argues the writ should not issue to Petitioner because: (1) the State Courts' rejection of Petitioner's _Batson_ claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; (2) the State Courts' rejection of Petitioner's prosecutorial misconduct regarding Vasquez's viewing of a line-up claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; (3) the State Courts' rejection of Petitioner's prosecutorial misconduct regarding the testimony of three witnesses claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; (4) the State Courts' rejection of Petitioner's ineffective assistance of counsel at trial claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; and (5) the State Courts' rejection of Petitioner's ineffective assistance of counsel at sentencing claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Opp. at p. 1-49.

The Court will address each of the issues raised by Petitioner in turn.

## DISCUSSION

### I.     Legal Standard

The Court's review of this *habeas corpus* petition is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal habeas court may only consider whether a person is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA requires federal courts to apply a "highly deferential standard" when conducting *habeas corpus* review of state court decisions and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).

When an issue raised in a petitioner's *habeas* petition has been litigated before the state court on appeal, a petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"For the purposes of federal habeas review, 'clearly established law' is defined as 'the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision.'" *Davis v. Racette*, 11-CV-5557, 2015 WL 1782558, at *3 (E.D.N.Y. Apr. 21, 2015) (Brodie, J.) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A state court decision is 'contrary to,' or an 'unreasonable application of,' clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different [from] that reached by the Supreme Court on 'materially indistinguishable'

facts; or (3) identifies the correct governing legal rule, but unreasonably applies it to the facts of the petitioner's case." *Id.* (quoting *Williams*, 529 U.S. at 412-13 and citing *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011)). To establish that a state court's decision constitutes an unreasonable application of the law, the state court decision must be "more than incorrect or erroneous[,]" it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). This means "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *see also Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010). "This distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review." *Renico*, 559 U.S. at 773 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

As will be discussed below, each of Petitioner's five claims was raised at some step in the state court appeals process. Accordingly, Petitioner is entitled to *habeas corpus* relief on any ground individually only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

## II.   Analysis

### A. Petitioner's *Batson* Claim

Petitioner, as represented by counsel, argues he is entitled to *habeas* relief because the Prosecutor committed a *Batson* violation at his trial. Petition at 16-47. Specifically, Petitioner alleges that the Prosecutor's reasons for striking two African-American members of the jury venire panel, Ms. Gordon and Ms. Williams, were pretextual given that the reasons were not

relevant to his case and similarly situated White members of the venire panel were not struck. Petition at 32-42.

Petitioner raised his *Batson* claim on his direct appeal, and both the Second Department and the Court of Appeals adjudicated the issue on the merits. *Hecker*, 942 N.E.2d at 273-74; *Black*, 886 N.Y.S.2d at 461-62. Accordingly, Petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see also* I, *supra*.

*Batson v. Kentucky*, 476 U.S. 79 (1986), sets forth the relevant federal law on the issue of racial discrimination at jury venire. "In [*Batson*], the Supreme Court held that the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Bowman v. Lee*, 10-CV-951, 2015 WL 1514378, at *1 (E.D.N.Y. Apr. 3, 2015) (Korman, J.). Courts evaluating a *Batson* challenge follow a three-step inquiry:

> A *Batson* objection may be lodged when a party perceives a pattern of discrimination in the use of peremptory strikes during the voir dire, so-called "step one" or the "prima facie case" of a *Batson* challenge. Step two requires that, upon a showing of a pattern of discrimination, the opposing party provide race neutral reasons for its peremptory strikes. Finally, step three returns the ball to the challenger, who must then show that the professed race neutral reasons were pretextual and prove racial discrimination was the real motive.

*Richardson v. Greene*, 497 F.3d 212, 214 (2d Cir. 2007). At the second step, "[t]he prosecutor's explanation need not be persuasive or even plausible, and the reason offered will be deemed race-neutral unless discriminatory intent is inherent in the explanation." *Hicks v. Ercole*, 09-CV-2531, 2015 WL 1266800, at *9 (S.D.N.Y. Mar. 18, 2015) (Nathan, J.) (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995) and *United States v. Martinez*, 621 F.3d 101, 109 (2d Cir. 2010)). "During the third step, the trial court considers the totality of the circumstances to determine

whether the objecting party has carried its burden of proving purposeful discrimination by a preponderance of the evidence." *Bowman*, 2015 WL 1514378 at *1 (internal quotation marks omitted) (citing *Martinez*, 621 F.3d at 109). As the Supreme Court stated in *Miller-El v. Cockrell*:

> the critical question in determining whether a [petitioner] has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike . . . [T]he issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy. . . . [Further,] a state court's finding of the absence of discriminatory intent is a pure question of fact accorded significant deference[.]

537 U.S. 332, 338-39 (2003) (internal quotation marks and citations omitted); *see also Hernandez v. New York*, 500 U.S. 352, 365 (1991) ("[T]he decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.") (internal quotation marks and citations omitted). At every step of the process, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768.

Petitioner challenges the Prosecutor's peremptory strikes of Ms. Gordon and Ms. Williams on the basis that the trial court erred in its step-three ruling, *i.e.*, the race-neutral reasons proffered by the prosecution should have been found to be pretextual. Petition at 31-41. Both the Second Department and the Court of Appeals ruled on Petitioner's step-three claim, and both found Petitioner failed to carry his ultimate burden of persuasion on the issue of whether the

reasons proffered by the Prosecutor were pretextual. *Hecker*, 942 N.E.2d at 273; *Black*, 886 N.Y.S.2d at 461. Further, both the Second Department and the Court of Appeals gave appropriately significant deference to the findings of the trial court, which they identified by citing *Hernandez*, 500 U.S. at 365, and *Miller-El*, 537 U.S. at 339, respectively. *See Hecker*, 942 N.E.2d at 273; *Black*, 886 N.Y.S.2d at 461.

As an initial matter, it is worth noting seven of the first twelve potential jurors seated were African American. Principal Ex. M at 151. Prosecutor only challenged four of the original seven African-American potential jurors. *Id.* at 149 (the fifth juror initially challenged by the Prosecutor was a white woman). Petitioner now raises a *Batson* challenge to only two of the four potential jurors originally challenged by the Prosecutor. Petition at 31-41.

Regarding the first juror at issue, the Prosecutor stated that he challenged Ms. Gordon because she "is unemployed and lives in a [n]eighborhood, East New York, that isn't too far away from Brownsville." Principal Ex. M at 151; *see also id.* at 85. Similarly, regarding the second juror at issue, the Prosecutor explained he challenged Ms. Williams because she "is unemployed [and has] no high school education." *Id.* at 151; *see also id.* at 87-88 (Ms. Williams reported that she did not finish high school although she completed eleventh grade). Defense Counsel argued in response that there was no evidence Ms. Gordon lived near the scene of the crimes and, as to both Ms. Gordon's and Ms. Williams' unemployment, "often times in these inner city neighborhoods a lot of the residents therein are usually like the last hired and first fired." *Id.* at 152-53. After hearing Defense Counsel's argument, the trial court held the Prosecutor "provided race neutral bases for his challenge" and determined that the proffered reasons were "not discriminatory." *Id.* at 154-55.

Prosecutor's reasons for excluding Ms. Gordon, her lack of employment and her neighborhood, and for excluding Ms. Williams, her lack of employment and her lack of education, are not facially discriminatory. There is no obvious racially discriminatory intent inherent in the Prosecutor's reasoning. *See Hicks*, 2015 WL 1266800 at *9. Petitioner therefore had the "burden of proving purposeful discrimination by a preponderance of the evidence." *Bowman*, 2015 WL 1514378 at *1 (internal quotations and citation omitted).

On this record, the Second Department and the Court of Appeals did not err in finding Petitioner had failed to meet his burden. Given the other African-American members of the jury as well as the Prosecutor's apparent trial strategy of choosing jurors who were employed or who had a lengthy history of employment and who had at least a high school education, the totality of the circumstances does not suggest the Prosecutor acted in a racially discriminatory manner. *See Hicks*, 2015 WL 1266800 at *9; *see also Hecker*, 942 N.E.2d at 274 (discussing the educational background and employment history of the seated jurors); Principal Ex. M at 151. Further, the Prosecutor later struck another female juror of an unidentified race who lived in East New York, was unemployed, and had no high school education past the eleventh grade. Principal Ex. M at 119, 156. Defense Counsel did not raise a *Batson* issue as to her. *Id.* at 156. This strike, which was in keeping with the reasons the Prosecutor provided for striking Ms. Gordon and Ms. Williams, suggests that the Prosecutor was employing a trial strategy rather than engaging in racial discrimination. *See Miller-El*, 537 U.S. at 339. The findings of the trial court that Petitioner had not met his burden to show Prosecutor's reasons were pretextual, to which the Second Department and the Court of Appeals correctly gave much deference, also undermine Petitioner's step three argument.

Accordingly, the Second Department's and the Court of Appeals' rulings that Petitioner's did not suffer a *Batson* violation were neither contrary to nor an unreasonable application of, clearly established Supreme Court law, as they deferred to the findings of the trial court and appropriately analyzed the totality of the circumstances surrounding the *Batson* challenge. Therefore, Petitioner's request for *habeas* relief on this basis must be denied.

### B. Petitioner's Prosecutorial Misconduct Claims

Petitioner, now proceeding *pro se*, first argues that his right to due process was violated by two instances of prosecutorial misconduct. Petition at 63-81. Specifically, Petitioner alleges (1) the Prosecutor's statements and actions pertaining to Vasquez's viewing or non-viewing of a line-up on November 30, 2004; and (2) the Prosecutor's actions and summation relating to three prosecution witnesses who Petitioner states gave false testimony warrant a grant of *habeas* relief. *Id.*

Petitioner litigated each of these issues in state court. He raised the line-up issue before the Second Department and the Court of Appeals, and the false testimony issue in his 440 Motion to the trial court. *See* Principal Ex. J at 5-10; Opp. Ex. D at 1-2, 17-29. The issues were all adjudicated on the merits. *See Hecker*, 942 N.E.2d at 274 (finding Petitioner's prosecutorial misconduct allegations meritless); Opp. Ex. F at 4 (finding Petitioner's false testimony allegations meritless). Accordingly, Petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudications "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see also* I, *supra*. The Court will address each of Petitioner's prosecutorial misconduct claims in turn.

### 1. Prosecutorial Misconduct Regarding Vasquez and the Line-up

Petitioner's first prosecutorial misconduct claim involves the Prosecutor's statements and prosecution witness testimony that Vasquez had not viewed a line-up involving Petitioner on November 30, 2004. Petition at 63-70; Dkt. 12 ("Reply") at 14-16. Petitioner argues the Prosecutor's statements at the *Huntley-Wade* hearing that only two line-ups had taken place constituted prosecutorial misconduct because the Screening Sheet and N.Y. C.P.L.R. 710.30(1)(b) notice that Prosecutor turned over to Petitioner and Defense Counsel both indicated Vasquez had participated in a line-up. Petition at 65-66; Reply at 14-16; *Pro Se* Exs Ex. A, B. Petitioner also argues the Prosecutor committed misconduct by permitting Detective Carlos Medina to testify on cross-examination during trial that he had never conducted a line-up with Vasquez. Petition at 67; Reply at 14-16; Opp. Ex. B at 729.

The relevant federal law on the issue of when prosecutorial misconduct regarding false evidence amounts to the denial of a criminal defendant's due process rights under the Fourteenth Amendment is set forth in *Napue v. Illinois*, 360 U.S. 264, 269 (1959). *See McCants v. Hallenback*, 13-CV-5587, 2014 WL 4638836, at *6 (E.D.N.Y. Sept. 16, 2014) (Bianco, J.). The threshold question is whether the evidence presented was false. *Id.*. With respect to perjured testimony, this requires a showing that the witness gave "false testimony concerning a material manner with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *Id.* (internal quotation marks and citations omitted). "The petitioner has the burden of demonstrating, by a preponderance of the evidence, that the witness committed perjury." *Boyle v. United States*, 10-CV-2639, 2013 WL 6684995, at *2 (E.D.N.Y. Dec. 18, 2013) (Johnson, J.) (internal quotation marks and citation omitted).

If the evidence is false or the testimony is perjured, then "[t]he introduction of perjured testimony at a criminal trial violates due process where the prosecution knew or should have known of the perjury and where there is any reasonable likelihood that the perjured testimony could have affected the judgment of the jury." *Hamilton v. Lee*, 13-CV-4336, 2015 WL 1402316, at *9 (E.D.N.Y. Mar. 27, 2015) (Weinstein, J.) (citations omitted). Accordingly, a prosecutor's use of false testimony can result in a denial of a *habeas* petitioner's right to due process. There is, however, no clearly established Supreme Court rule that a prosecutor's use of false evidence deprives a criminal defendant of his due process rights when the defendant's attorney has access to the evidence which suggests the testimony is false. *See, e.g.*, *United States v. Manuel-Garcia*, 505 F.3d 1, 10-11 (1st Cir. 2007) ("Although there is some division within the circuits on the issue, we agree with the majority of circuits that absent unusual circumstances, the right of the defendant to disclosure by the prosecutor is deemed waived if defense counsel with actual knowledge of the false testimony chooses not to present such information to the jury. When the defendant knows about the false testimony and fails to bring it to the jury of the court's attention, the assumption is that he did so for strategic reasons, and the defendant will not be allowed to question his own strategic choices on [*habeas*] appeal.") (internal quotation marks, brackets, and citations omitted).

As an initial matter, it is unclear on the record whether or not Vasquez viewed a line-up and, accordingly, whether the Prosecutor's statements at the hearing and Detective Medina's testimony at trial were, in fact, false. One of the C.P.L. 710.30(1)(b) notices states that only Christian and Vasquez viewed a line-up, while the other states only Christian and Zolio did. *Compare Pro Se* Exs Ex. A *to* Opp. Attachment A. The Screening Sheet names all three men as having viewed a line-up. *See Pro Se* Exs Ex. B at 1. Together, it is unclear whether Vasquez

viewed a line-up on November 30, 2004, given the contradictory C.P.L. 710.30(1)(b) notices and no indication that one is more trustworthy than the other. It is possible, therefore, that the Prosecutor's statements and Detective Medina's testimony that Vasquez did not view a line-up were true. Petitioner has not persuaded this Court that the testimony was false by a preponderance of the evidence. As such, the Court of Appeals' ruling that Petitioner's prosecutorial misconduct claim was without merit is neither contrary to nor an unreasonable application of, clearly established Supreme Court law.

Assuming, however, that Vasquez did view a line-up and make a "mis-hit," Defense Counsel had been provided with the Screening Sheet and C.P.L. 710.30(1)(b) notice which stated Vasquez had viewed a line-up and made a mis-hit at both the hearing and at trial. Defense Counsel therefore had access to evidence suggesting that the Prosecutor's statements at the *Huntley-Wade* hearing and Detective Medina's testimony at trial were false, and nonetheless chose not to challenge the Prosecutor's statements or Detective Medina's testimony on that ground. Given Defense Counsel's knowledge and choice, there is no clearly established Supreme Court law stating Petitioner suffered a violation of his due process rights. *See, e.g.*, *Manuel-Garcia*, 505 F.3d at 10-11. Accordingly, the Court of Appeals' ruling that Petitioner's prosecutorial misconduct claim was without merit is neither contrary to nor an unreasonable application of, clearly established Supreme Court law. Petitioner's request for *habeas* relief on this basis is therefore denied.

### 2. Prosecutorial Misconduct Regarding the Testimony of Three Witnesses

Petitioner's second prosecutorial misconduct claim involves the Prosecutor's use of three witnesses at trial who allegedly presented perjured testimony, and the Prosecutor's reference to that false testimony at summation. Petition at 71-81; Reply at 17-20. Specifically, Petitioner

challenges the testimony of Detectives Dobles, McGarry, and Anderson that they saw Petitioner in possession of a gun on the street and that Detectives Dobles and McGarry chased Petitioner into the building and up the stairs until McGarry stopped to pick up the dropped gun on the eleventh floor and Dobles chased Petitioner to the thirteenth floor where Dobles used the dropped keys to get into the apartment into which Petitioner had fled. *See* Petition at 79; Reply at 17. Petitioner also challenges the Prosecutor's summation in which the Prosecutor relied on and suggested the jury should rely on the three detectives' testimony. Petition at 80; Reply at 19.

The relevant federal law on the issue of when prosecutorial misconduct regarding false evidence amounts to the denial of a criminal defendant's due process rights under the Fourteenth Amendment is set forth above. *See* II.B.1., *supra*. The relevant federal law on the issue of when a prosecutor's improper statement amounts to the denial of a criminal defendant's due process rights is set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), *United States v. Young*, 470 U.S. 1 (1985), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). "[A] mere showing of prosecutorial misconduct does not necessarily entitle a petitioner to habeas relief." *Covington v. Warden, Five Points Corr. Facility*, 11-CV-8761, 2014 WL 7234820, at *13 (S.D.N.Y. Dec. 8, 2014) (Mass, M. J.) (citing *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). "Instead the petitioner must show that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotation marks omitted) (citing *Bentley*, 41 F.3d at 824). As a result of this high standard, "a [petitioner] asserting that a prosecutor's remarks warrant a new trial faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *Stewart v. Lee*, 09-CV-4374, 2014 WL 3014608, at *5 (E.D.N.Y. July 3, 2014) (Vitaliano, J.) (internal quotation marks and citation omitted).

Here, Petitioner has made no showing that the testimony of Detectives Dobles, McGarry, and Anderson was perjured. Petitioner argues that the testimony and the evidence presented had some inconsistencies, especially in regards to why the individual arrested in the apartment with Petitioner was originally charged with the gun which Petitioner was subsequently charged with possessing. Petition at 77-79; Opp. Ex. B. at 371-73. That allegation, without more, is insufficient to show that the three detectives had the "willful intent to provide false testimony" rather than merely making mistakes as a result of "confusion, mistake, or faulty memory." *McCants*, 2014 WL 4638836 at *6. Further, Detective Dobles explained during cross-examination that he had made a mistake in the paperwork when he listed both of the recovered guns on the paperwork for the man arrested with Petitioner. Opp. Ex. B. at 526-27. Additionally, while Petitioner references the testimony of Ms. Edna Thorton in his petition as proving that the three detectives committed perjury, Ms. Thorton's testimony does no such thing. *See, e.g.*, Petition at 73-76. Ms. Thorton testified that police officers entered her eleventh-floor apartment on November 30, 2004 looking for Petitioner, even though Petitioner was on the thirteenth floor, and that those officers handcuffed an individual who was not Petitioner thinking he was Petitioner. Petition at 73-74; Opp. Ex. B. at 548-50. This testimony about some unidentified officers, however, has no bearing on whether the three detectives whose testimony Petitioner challenges took the actions they testified having taken. Petitioner has failed to meet his burden to show the testimony was perjured. *See Boyle*, 2013 WL 6684995 at *2. Accordingly, the trial court's ruling that there was no evidence the three detectives testified falsely is neither contrary to nor an unreasonable application of, clearly established Supreme Court law. *See* Opp. Ex. F at 4.

19

Furthermore, given Petitioner's failure to provide evidence Detectives Dobles, McGarry, and Anderson committed perjury, the Prosecutor's reference to that testimony in summation cannot constitute prosecutorial misconduct and certainly does not rise to the level of "so severe and significant as to result in the denial of his right to a fair trial." *Stewart*, 2014 WL 3014608 at *5. Accordingly, the trial court's ruling that Petitioner's prosecutorial misconduct claim was without merit is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Petitioner's request for *habeas* relief on this basis is therefore also denied.

### C. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner, still proceeding *pro se*, also argues that he received ineffective assistance of counsel. Petition at 82-103. Petitioner makes two ineffective assistance of counsel arguments, which the Court will address chronologically. First, Petitioner argues he received ineffective assistance of counsel during trial because Defense Counsel failed to sever the counts of the indictment and failed to correct the Prosecutor's and Detective Medina's false testimony about Vasquez's line-up. Petition at 70, 88-103; Reply at 20-22. Second, Petitioner argues he was denied effective assistance of counsel at sentencing when Defense Counsel failed to object to Petitioner's prior felony conviction being counted as a violent felony conviction. Petition at 82-87; Reply at 22-28.

Both of Petitioner's ineffective assistance of counsel claims were litigated before the trial court in Petitioner's 440 Motion and rejected on the merits. Opp. Ex F at 4-9. In addition, Petitioner's ineffective assistance of counsel claims were litigated before the Second Department, which rejected them as meritless. *Black*, 886 N.Y.S.2d at 462 (citation omitted). Petitioner, accordingly, is entitled to *habeas corpus* relief only if he can show the state court

adjudications "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see* I., *supra*.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant federal law governing ineffective assistance of counsel claims. In reviewing a state court's application of the *Strickland* standard, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States [D]istrict [C]ourt." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

"Under *Strickland*, in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient' . . . and (2) he must show that 'the deficient performance prejudiced the defense[.]'" *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland,* 466 U.S. at 687, 690). "It is the accused's 'heavy burden' to demonstrate a constitutional violation under *Strickland*." *Moreno v. Smith*, 06-CV-4602, 2010 WL 2975762, at *15 (E.D.N.Y. July 26, 2010) (Matsumoto, J.) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

Under the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

(internal quotation marks and citations omitted). Further, it is well settled under *Strickland* that "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). "The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance." *Hicks v. Ercole*, 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015) (Nathan, J.) (citing *United States v. Reqalado*, 518 F.3d 143, 150 n.3 (2d Cir. 2008)). Similarly, "counsel [does] not render ineffective assistance by failing to make [an objection that would have been overruled as baseless]." *Johnson v. Rivera*, 07-CV-334, 2010 WL 1257923, at *9 (N.D.N.Y. Mar. 25, 2010) (McAvoy, J.) (citing *United States v. DiPaolo*, 804 F.2d 225, 234 (2d Cir. 1986)).

Under the second prong, to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694.

### 1. Petitioner's Ineffective Assistance of Counsel at Trial Claim

Petitioner argues he received ineffective assistance of counsel at trial because Defense Counsel failed to sever the counts of the indictment and failed to correct the Prosecutor's and Detective Medina's false testimony about Vasquez's line-up. Petition at 70, 88-103; Reply at 20-22. The Second Department dismissed Petitioner's ineffective assistance of counsel claims as meritless on direct review. *Black*, 886 N.Y.S.2d at 462 (citation omitted). The trial court also

addressed these claims in its denial of Petitioner's 440 Motion, and found the arguments requested by Petitioner would have been meritless. Opp. Ex. F at 4-7.

Here, both of the arguments Petitioner states Defense Counsel was constitutionally ineffective for having failed to make at trial would have been meritless. On the severing of the indictment issue, Petitioner argues the counts pertaining to the October 27, 2004 robbery and the November 30, 2004 guns and contraband charges should have been severed. Petition at 89-90, 92-103. New York state law, however, does not permit the severance of the counts with which Petitioner was charged. New York Criminal Procedure Law § 200.20(2) states offenses are joinable when:

> (a) They are based upon the same act or upon the same criminal transaction . . . ; or
> (b) Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first; or
> . . .
> (d) Though not directly joinable with each other pursuant to paragraph (a), (b)[,] or (c), each is so joinable with a third offense contained in the indictment. In such case, each of the three offenses may properly be joined not only with each of the other two but also with any further offense joinable with either of the other two, and the chain of joinder may be further extended accordingly.

N.Y. Crim. Proc. Law § 200.20(2). Petitioner was charged with criminal possession of stolen property as a result of the recovery of Zolio's identification cards from the thirteenth floor apartment into which Petitioner ran on November 30, 2004. This count was joinable with the counts from the October 27, 2004 robbery because the possession of the property stolen from the robbery was "based . . . upon the same criminal transaction" as the robbery counts in the indictment. *See* N.Y. Crim. Proc. Law § 200.20(2)(a). This count was also joinable because proof that Petitioner had possession of Zolio's identification documents was "material and

admissible as evidence in chief upon a trial of the [robbery counts.]" N.Y. Crim. Proc. Law §

200.20(2)(b). Accordingly, all of the counts from the October 27, 2004 robbery were joinable

with all of the counts from November 30, 2004 pursuant to New York Criminal Procedure Law §

200.20(2)(d). Further, New York Criminal Procedure Law § 200.20(3) permits a severance of an

indictment only in cases "where [] joinder rests solely upon the fact that such offenses . . . are the

same or similar in law, as prescribed in [New York Criminal Procedure Law § 200.20(2)(c)]."

N.Y. Crim. Proc. Law § 200.20(3). As the counts charged against Petitioner were not joined

under New York Criminal Procedure Law § 200.20(2)(c) but rather under (2)(a), (2)(b), and

(2)(d), a motion to sever would have been meritless. Accordingly, the state courts' denial of

Petitioner's ineffective assistance of counsel claim regarding the failure to sever was not contrary

to, or an unreasonable application of, clearly established federal law because, as a matter of state

procedural law, a motion on this basis would have been denied as meritless. Therefore,

Petitioner's application for habeas relief on this ground must be denied.

On the line-up issue, Petitioner argues Defense Counsel was deficient for "failing to

correct the [P]rosecutor's misrepresentation of facts concerning Vasquez['s] line-up result and

not impeaching [D]etective Medina on his false testimony at trial." Petition at 70; *see also* Reply

at 20-21. As discussed above, however, it is uncertain whether Vasquez ever viewed a line-up.

*See* II.B.1., *supra*. It is consequently unclear that Defense Counsel's performance was deficient

in failing to challenge statements that have a likelihood of being true. In addition, Petitioner has

not overcome the presumption that Defense Counsel's choice was trial strategy, as it is evident

Defense Counsel put on a vigorous defense of Petitioner since Petitioner was acquitted of the

counts of criminal possession of a weapon in the fourth degree, unlawful possession of

marijuana, two counts of criminal possession of a controlled substance in the seventh degree, and

criminal possession of a firearm/ possession of ammunition. *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted); *see also* Opp. Ex. B at 1006-07.

Further, Petitioner cannot show that Defense Counsel's failure to question Detective Medina or Vasquez about Vasquez's line-up would have resulted in a different outcome at trial. *See Strickland*, 466 U.S. at 694. Petitioner was identified as the gunman by Christian in a line-up and at trial, and was identified as the gunman by Zolio at trial, who also testified that he had narrowed his choice down to two people in the lineup and thought it was likelier to be Petitioner but did not then identify him. *See* Opp. Ex. B at 69, 84-85, 180, 182. In addition, the jury found Petitioner guilty of being in possession of Zolio's identification documents, which alone likely would have tied Petitioner to the October 27, 2004 robbery. Opp. Ex. B at 1007. Accordingly, the state courts' denial of Petitioner's ineffective assistance of counsel claim regarding the failure to raise Vasquez's line-up mis-hit at trial was not contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner's application for habeas relief on this ground must be denied.

### 2. Petition's Ineffective Assistance of Counsel at Sentencing Claim

Petitioner also argues he was denied effective assistance of counsel at sentencing when Defense Counsel failed to object to Petitioner's prior felony conviction being counted as a violent felony conviction. Petition at 82-87; Reply at 22-28. Petitioner raised this claim in his 440 Motion, and the trial court adjudicated it the claim on the merits when it dismissed Petitioner's 440 Motion. Opp. Ex. F at 7-9.

Here, as with Petitioner's ineffective assistance of counsel at trial claims, Petitioner's claim is meritless. Petitioner first alleges Defense Counsel should have challenged Petitioner's original violent felony conviction because Petitioner's prior counsel had informed Petitioner that

the conviction was non-violent. Petition at 84-85. A review of Petitioner's guilty plea in the prior conviction, however, clearly shows Petitioner was informed of and agreed to the fact that the plea was to a violent felony conviction. Opp. Attachment F at 6 (informing Petitioner his plea on February 25, 2003 would be "a violent felony conviction[,]" to which Petitioner responded "Yes."). Petitioner therefore knew the plea was to a violent felony, and cannot have been prejudiced by prior counsel's allegedly telling him otherwise. Further, Defense Counsel could not have challenged the prior conviction's designation as violent on this ground.

Petitioner also argues Defense Counsel was deficient for failing to challenge the designation of his prior conviction as a violent felony because a charge of Criminal Possession of a Weapon in the Third Degree may only be pled out as a non-violent felony under New York Criminal Procedure Law § 220.10(5)(d)(iii). Petition at 85-87; Reply at 23-26. The trial court rejected this argument in evaluating Petitioner's 440 Motion, holding that New York Criminal Procedure Law § 220.10(5)(d)(iii) imposes floors on how far a count may be pled down, but not ceilings on whether the count may be pled as charged. Opp. Ex. F. at 8-9.

New York Criminal Procedure Law § 220.10(5)(d), and by extension section (iii), only applies where the criminal defendant has been charged with a Class A or Class B or C violent felony. N.Y. Crim. Proc. Law § 220.10(5)(d). Section (5)(d) states:

> (d) Where the indictment charges a class A felony . . . or charges a class B or class C violent felony . . . , then a plea of guilty entered pursuant to subdivision three of four must be as follows:
> . . .
> (iii) Where the indictment charges the class D violent felony offense of criminal possession of a weapon in the third degree . . . , and the defendant has not been previously convicted of a class A misdemeanor defined in the penal law in the five years preceding the commission of the offense, then a plea of guilty must be either to the class E violent felony offense of attempted criminal possession of a weapon in the third degree or to the class A misdemeanor of criminal possession of a weapon in the fourth degree[.]

It is evident from the text of section (5)(d) that it applies only in a situation where the criminal defendant is indicted on a class A felony or Class B or C violent felony. Section (5)(d)(iii) then applies only when a criminal defendant has been charged both with (1) either a class A felony or Class B or C violent felony, which triggers Section (5)(d), and also (2) the class D violent felony offense of criminal possession of a weapon in the third degree. N.Y. Crim. Proc. Law § 220.10(5)(d)(iii). The rule functions as a legislative prescription preventing a prosecutor from pleading down particular counts when higher counts were originally included on the indictment against a defendant. *See People v. Onofre*, 47 Misc. 3d 1206(A), *2 (N.Y. Sup. Ct. 2015) (citations omitted); *People v. Hathaway*, 662 N.Y.S.2d 701, 706-07 (N.Y. Sup. Ct. 1997) ("The fundamental purpose for the statutory limitations on plea bargaining is to insure that, in certain legislatively determined instances, wither: (a) a defendant will not be permitted to bargain around a sentence of imprisonment, or (b) a record of felony conviction will be established for purposes of sentencing the defendant as a second felony offender, either in the present case or in the future.") (internal quotation marks and citations omitted).

Here, however, the only felony with which Petitioner was charged was the class D violent felony offense of criminal possession of a weapon in the third degree, to which he pled guilty. Opp. Attachment F at 3-4, 6. Accordingly, New York Criminal Procedure Law § 220.10(5)(d)(iii) is inapplicable to Petitioner's prior guilty plea. Defense Counsel did not commit ineffective assistance of counsel by failing to make an argument contesting the legality Petitioner's prior plea under New York Criminal Procedure Law § 220.10(5)(d)(iii) as it would have been meritless. Accordingly, the trial court's denial of Petitioner's ineffective assistance of counsel claim regarding the failure of Defense Counsel to challenge Petitioner's prior conviction was not contrary to or an unreasonable application of federal law. Therefore, Petitioner's request

for habeas relief on the grounds that he was denied effective assistance of counsel at sentencing is denied.

## CONCLUSION

For the reasons stated herein, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 6, 2015
Brooklyn, New York